UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EMAN SOUDANI,                                                                    **23 CIV 9905 (PMH)**

                    Plaintiff and Counterclaim
                    Defendant,
                                                               **AMENDED ANSWER**
                                                               **AND COUNTER CLAIMS**

        -against-

MOUT'Z SOUDANI,

                    Defendant and Counterclaim
                    Plaintiff,
------------------------------------------------------------------------X

    Defendant Mout'z Soudani by his attorneys Hodges, Walsh & Burke, LLP, hereby answer the Complaint filed against him by Eman Soudani as follows:

## NATURE OF THE ACTION

1. Denies the allegations stated and contained in paragraphs number "1", "2", "3", "4", "5", "6", "7", "8", "9", "10", "11", "12", "13" and "14" of the complaint.

## JURSDICTION AND VENUE

2. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "15" as to whether plaintiff was ever legally domiciled in Colorado after she fled New York with defendant's money and after her son stole over 1.6 million dollars from defendant.

3. Defendant denies the allegations contained in paragraph "16" that any claims occurred in Rockland or Orange Counties or anywhere else.

1

## PARTIES

4. Defendant Denies the allegations contained in paragraph "17" of the complaint.

5. Defendant admits the allegations contained in paragraph "18" of the complaint.

## FACTUAL ALLEGATIONS

6. Defendant denies the allegations stated and contained in paragraphs "19" of the complaint.

7. Defendant admits the allegations stated and contained in paragraph "20" in that the plaintiff is fluent in the English and denies the rest of the allegations contained in paragraph "20" of the complaint.

8. Admit the allegations contained in paragraph "21" of the complaint.

9. Denies knowledge or information to form a belief as to the truth of the allegations stated and contained in paragraph "22" of the complaint.

10. Admit that Defendant's wife was murdered but deny all other allegations stated or contained in paragraph "23" of the complaint.

11. Deny the allegations stated or contained in paragraphs "24", "25", "26", "27", "28", "29", "30", "31", "32", "33", "34", and "35" of the complaint.

12. Admit the allegation stated and contained in paragraph "36" of the complaint.

13. Deny the allegations stated and contained in paragraphs "37", "38", "39", "40", "41", and "42" of the complaint.

14. Admit that plaintiff moved in and lived with her husband but deny the rest of the allegations stated and contained in paragraph "43" of the complaint.

15. Deny the allegations stated and contained in paragraph "44" of the complaint.

16. Admit the allegations stated in paragraph "45" that plaintiff became pregnant.

17. Deny the allegations stated and contained in paragraphs "46", "47", "48", "49", "50", "51", "52", "53", "54", "55", "56", "57", "58", "59", "60", "61", "62", "63", "64", "65", "66", "67", "68", "69", "70", "71", "72", "73", "74", "75", "76", "77", "78", "79", "80", "81", "82", "83", "84", "85", "86", "87", "88", "89", "90", "91", "92", "93", "94", "95", "96", "97", "98", "99", "100", and "101" of the complaint.

18. Admit that plaintiff and her son fled 40 Bailey Road when defendant began to become suspicious of theft by plaintiff and her son, deny the rest of the allegations contained in paragraph "102" of the complaint.

19. Deny the allegations stated or contained in paragraphs "103", and "104" of the complaint.

20. Admit the allegations stated or contained in paragraph "105" of the complaint.

21. Deny the allegations stated or contained in paragraph "106" of the complaint.

22. Deny knowledge or information as to form a belief as to the truth of the allegations stated or contained in paragraph "107" of the complaint and whether the plaintiff consented to extradition to New York after bail had been set in Colorado after plaintiff's arrest.

23. Deny knowledge or information to form a belief as to the allegations stated or contained in paragraph "108" of the complaint or the agreement plaintiff reached.

24. Admit the allegations stated and contained in paragraph "109" and further admit that in December 2023 plaintiff's son pled guilty to the felony charge of stealing over 1.6 million dollars from defendant.

25. Deny the allegations stated or contained on paragraphs "110", "111", "112", "113", "114", "115", and "116" of the complaint.

26. Deny know or information to form a belief as to the truth of the allegations stated or contained in paragraphs "117," "118", and "119" of the complaint.

27. Deny the allegations stated or contained in paragraphs "120", "121", "122", "123", "124", "125", "126","127", "128", "129", "130", "131", "132, "133", "134", "135", "136", "137", "138", "138", "140", and "141" of the complaint.

28. Defendant repeats, reiterates and realleges each and every response set forth above with the same force and effect as if fully set forth at length herein.

29. Defendant denies the allegations stated or contained in paragraphs "143", "144", "145", and "146" of the complaint.

30. In response to paragraph "147" of the complaint, Defendant repeats, reiterates and realleges each and every response set forth above with the same force and effect as if fully set forth at length herein.

31. Defendant denies the allegations stated or contained in paragraphs "148", "149", "150" of the complaint.

32. In response to paragraph "151" Defendant repeats, reiterates and realleges each and every response set forth above with the same force and effect as if fully set forth at length herein.

33. Defendant denies the allegations stated or contained in paragraphs "152", "153", "154", "155" of the complaint.

34. In response to paragraph "156" Defendant repeats, reiterates and realleges each and every response set forth above with the same force and effect as if fully set forth at length herein.

35. Deny the allegations stated or contained in paragraphs "157", "158", "159", "160", and "161" of the complaint.

36. In response to paragraph "162" Defendant repeats, reiterates and realleges each and every response set forth above with the same force and effect as if fully set forth at length herein.

37. Defendant denies the allegations stated or contained in paragraphs "163", "164", "165", and "166" of the complaint.

38. In response to paragraph "167" Defendant repeats, reiterates and realleges each and every response set forth above with the same force and effect as if fully set forth at length herein.

39. Defendants denies the allegations stated or contained in paragraphs "168", "169", "170", and "171" of the complaint.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

40. The plaintiff's Complaint fails to state a cause of action and/or claim upon which relief may be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

41. The within causes of action are barred by the Statute of Limitations in that said action was not commenced within the applicable statute of limitations period.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

42. The injuries claimed by the plaintiff were caused by the actions and/or wrongdoing of third persons or entities not parties hereto and defendant claims an offset therefore.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

43. Defendant claims an offset for all settlements with other persons or entities based on the events described herein pursuant to Section 15-108 of the New York General Obligations Law.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

44. Pursuant to CPLR 4545(c), any award to the plaintiff for economic loss shall be reduced by the amount of economic recovery received from collateral sources.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

45. The limited liability provisions of Article 16 of the CPLR are applicable to the claims asserted herein.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

46. The plaintiff's claims are barred by the doctrine of laches.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

47. The plaintiff consented to the living arraignments and was not threatened, coerced, intimidated, sexually abused, or forced to do anything against her will.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

48. Plaintiff's claims are barred, in whole or in part, based on the doctrine of unclean hands as a result of her misconduct.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

49. Plaintiff's claims are barred by reason of her unlawful conduct.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

50. The alleged harm and damages sustained by Plaintiff, if any, are speculative.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

51. Plaintiff has sustained no cognizable injury by reason of any wrongful conduct by Defendant. Plaintiff makes only conclusory allegations of damages.

## AS A FOR A THIRTEETH AFFIRMATIVE DEFENSE

52. Defendant's alleged conduct did not cause any loss of revenue or income to plaintiff. Plaintiff makes only conclusory allegations of economic harm and has not alleged any facts demonstrating actual pecuniary loss or special damages.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

53. Without conceding that Plaintiff has suffered any damages as a result of any alleged wrongdoing by defendant, plaintiff has failed to mitigate or minimize her alleged damages.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

54. Without conceding that plaintiff has suffered any damages as a result of any alleged wrongdoing by defendant, any "damage" incurred by plaintiff as a result of any alleged wrongful conduct should be offset by the value of the substantial sums of money that plaintiff and her son unlawfully stole and obtained from plaintiff.

## AS AND FOR AN SIXTEENTH AFFIRMATIVE DEFENSE

55. Plaintiff fails to state a claim for punitive damages.

## AS AND FOR A SEVENTEETH AFFIRMATIVE DEFENSE

56. Any claims of wrongdoing that occurred prior to plaintiff reaching the age of 18 are untimely as have not been revived by the Adult Survivors Act and the Child Victim's Act revival period expired in August of 2021.

## FACTUAL ALLEGATIONS IN SUPPORT OF COUNTER CLAIMS

57. From at least December 2017 through on or about October 2022, Plaintiff and Counter-Claim Defendant Emani Soudani and her now thirty-eight year-old son Martin Soudani were living at defendant counter-claimant plaintiff Mout'z Soudani's home located at 40 Bailey Road Montgomery, New York.

58. Upon information and belief from December 2017 through on or about October 2022, Plaintiff/Counter Claim Defendant Eman Soudani knowingly aided and abetted and

8

rendered assistance to her son Martin Soudani to defraud and lure the Defendant/Counter-claimant Plaintiff Mout'z Soudani into allowing Martin Soudani to withdraw $1,620,506.50 from the Mout'z's Soudani trust account so that Martin Soudani could invest these funds, in an alleged digital currency exchange.

59. Plaintiff/Counter Claim Defendant Eman Soudani's was aware that her son Martin Soudani claimed a 10% return on investment in order to entice by fraud and deceit for Mout'z Soudani to give her son Marin Soudani access to the trust fund account and to make transfers to a digital currency exchange.

60. Instead of investing the $1,620,506.50 in digital currency on Mout'z Soudani's behalf, Martin Soudani systematically transferred funds to digital currency accounts, called "wallets", established on various exchanges, which Martin Soudani solely controlled and did not invest Mout'z Soudani's money.

61. Upon information and belief Plaintiff/Counterclaim Defendant, Eman Soudani was aware of her son Martin's fraudulent activities and aided and abetted and covered up her son Martin Soudani's activities in defrauding Mout'z Soudani of the entire $1,620,506.50.

62. Upon information and belief, Plaintiff/counterclaim defendant Eman Soudani was aware of and/or aided and abetted her Martin Soudani in the creation of a fake website, which was designed to conceal the thefts from Mout'z Soudani, and issued fraudulent monthly statements, which purported to show the Mout'z Soudani that his "investment" of at least $1,620,506.50 was with a legitimate exchange and that Mout'z Soudani funds were secure and increasing in value.

63. In actuality, Martin Soudani did not invest Mout'z Soudani $1,620,506.50 in a

digital currency exchange but instead transferred Mout'z Soudani's money into accounts that Martin Soudani controlled and Martin Soudani used Mout'z Soudani's money for Martin Soudani's personal expenses, including luxurious travel and entertainment of young women without Mout'z Soudani's permission or authority.

64. In or around the summer/fall of 2022 Defendant/Counterclaimant plaintiff Mout'z Soudani became suspicious of the alleged "investments" of Martin Soudani and was planning to change passwords and control of his account and have someone other than Martin Soudani handle the investment.

65. Fearing arrest and prosecution, in or around the late summer/fall of 2022 Plaintiff/Counterclaimant Defendant's son Martin Soudani fled to Colorado, where Martin Soudani made efforts to not use funds which could be traced back to him.

66. Soon thereafter on or about October 2022, Defendant Counter-claimant Mout'z Soudani was the sole owner of approximately $570,000 United States Currency that he kept and placed in two safes in his home located at 40 Bailey Road. Plaintiff-Cross claim Defendant did not have permission or authority to open the safes and interfere or fringe upon defendant-counter-claim plaintiff Mout'z Soudani's sole rights to $570,000 United States Currency.

67. On or about October 2022, Plaintiff- Counter-Claim defendant Eman Soudani unlawfully entered defendant counter-claimant plaintiff Mout'z Soudani's bedroom and without Mout'z Soudani's permission or authority and stole the combinations to the two safes that Mout'z Soudani had hidden in his bedroom.

68. On or about October 2022, Plaintiff- Counter-Claimant Defendant Eman Soudani

10

unlawfully without Mout'z Soudani's permission or authority, opened his two safes using the stolen combinations and removed Mout'z Soudani $570,000 United States currency.

69. On or about October 2022, Plaintiff- Counter-Claimant Defendant Eman Soudani without permission or authority and interfering with Mout'z Soudani's sole and exclusive rights to the contents of his two safes Plaintiff- Counter-Claimant Defendant Eman Soudani stole and the entire contents including $570,000, trust agreements and other valuable property and documents and fled to Colorado to join her thief and fraudster son, Martin Soudani.

70. On or about October 2022, Defendant' Counterclaimant Mout'z Soudani reported to law enforcement in Orange County New York the theft of his $570,000 United States Currency by Plaintiff- Counter-Claimant Defendant Eman Soudani and the fraud and theft of at least $1,620,506.50 by Martin Soudani.

71. On March 8, 2023, investigators from the New York State Department of Financial Services and Orange County District Attorney's Office aided the Parker Police Department a executed a search warrant at the location where Martin Soudani was staying in Parker, Colorado. Martin Soudani was arrested and refused to voluntarily return to New York State to face the charges. The Orange County District Attorney's Office obtained a governor's warrant and Martin Soudani was extradited to New York.

72. On or about March 8, 2023 Plaintiff/Counterclaim Defendant Eman Soudani was also arrested in Colorado for the theft of the $570,000 from Mout'z Soudani in New York. Eman Soudani agreed to voluntarily return to New York to face criminal charges.

73. Eman Soudani's son Martin Soudani was charged in an indictment with the

11

crimes including Grand Larceny in the First Degree and Money Laundering in the First Degree.

74. The indictment charges that between December 19, 2017, and August 15, 2022, Martin Soudani embezzled $1,620,506.50 from Mout'z Soudani.

75. In the fall of 2023, Emani Soudani's son Martin Soudani pleaded guilty to the felony charges of Grand Larceny in the 1st Degree and full restitution of $1,620,506.50 with a state prison sentence to be handed down in late February 2024.

**AS AND FOR A FIRST COUNTER CLAIM FOR CONVERSION**

76. On or about October 2022 and continuing to present plaintiff/counterclaim defendant Eman Soudani unlawfully and without permission and authority unlawfully accessed Defendant Mout'z Soudani safes in his home and without Mout'z'Soudani's permission exercised dominion and control of and stole at least $570,000 United States Currency interfering with Mout'z Soudani as the sole owner and his exclusive rights to the $570,000 and fled New York State with his money.

77. Defendant Counterclaim plaintiff Mout'z Soudani was and continues to be damaged by Emani Soudani's conversion of Mout'z Soudani's $570,000 United States Currency.

**AS AND FOR A SECOND COUNTER CLAIM FOR UNJUST ENRICHMENT**

78. On or about October 2022 and continuing to present plaintiff unlawfully and without permission accessed Defendant Mout'z Soudani safes in his home and without defendant's permission exercised dominion and control of and stole at least $570,000

United States Currency and fled New York State with this money and by obtaining this money plaintiff was unjustly enriched.

### AS AND FOR THE THIRD COUNTER CLAIM OF CONVERSION

79. From on or about December 19, 2017 until at least to August 2022, the plaintiff aided and abetting her son Martin Soudani in his fraud, embezzlement and money laundering of $1,620,506.50 United States Currency from the defendant Mout'z Soudani.

80. Defendant Counterclaim plaintiff Mout'z Soudani was and continues to be damaged by Emani Soudani's and Martin Soudani's conversion of Mout'z Soudani's $1,620,506.50 United States Currency.

### AS AND FOR THE FOUTH COUNTERCLAIM FOR UNJUST ENRICHMENT

81. From on or about December 19, 2017 to present the plaintiff acting in concert and aided and abetting her son Martin Soudani in his fraud, embezzlement and money laundering of $1,620,506.50 United States Currency from the defendant Mout'z Soudani and plaintiff has shared in the proceeds of this fraud and theft and has been unjustly enriched.

### PRAYER FOR RELIEF

WHEREFORE, Defendant and Counter-claim plaintiff Mout'z Soudani hereby requests judgment against Plaintiff and Counterclaim-Defendant Eman Soudani as follows:

(a)   Enter judgment on his Counterclaims in Mr. Soudani's favor;

(b)   Award Mr. Soudani damages, in an amount to be determined at trial, plus prejudgment interest, to compensate Mr. Soudani for all monetary and/or

      economic damages;

(c)    Award Mr. Soudani damages for any and all other monetary and/or non-monetary losses suffered by him, including, but not limited to, loss of income, reputational harm and harm to professional reputation, in an amount to be determined at trial, plus prejudgment interest;

(d)    Award Mr. Soudani punitive damages, and any applicable penalties and/or liquidated damages in an amount to be determined at trial;

(e)    Award Mr. Soudani attorneys' fees, costs, and disbursements incurred in bringing these Counterclaims; and

(f)    Grant to Mr. Soudani any such further relief as the Court deems just and proper.

## JURY DEMAND

Counterclaim Plaintiff Mout'z Soudani hereby demands a trial by jury on all issues.

Dated: White Plains, New York
       February 20, 2023

                                   /s/ Michael K. Burke
                                   Michael K. Burke, Esq.
                                   Hodges Walsh & Burke, LLP
                                   *Attorneys for Defendant Mout'z Soudani*
                                   55 Church Street, Suite 211
                                   White Plains, NY  10601
                                   (914) 385-6000
                                   mburke@hwb-lawfirm.com