**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

EMAN SOUDANI,

Plaintiff and Counterclaim-Defendant,

     -against-

MOUT'Z SOUDANI,

Defendant and Counterclaim-Plaintiff.

Case No.: 23-cv-9905 (PMH) (AEK)

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION TO COMPEL TESTIMONY OF AND**
**PRODUCTION OF DOCUMENTS BY NON-PARTY**
**STEWART ROSENWASSER AT DEPOSITION**

LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC

Arthur D. Middlemiss
Arthur.Middlemiss@lbkmlaw.com
Marc Scholl
Marc.Scholl@lbkmlaw.com
10 Grand Central
155 East 44th Street, 25th Floor
New York, NY 10017
Telephone: (212) 826-7001
Facsimile: (212) 826-7146

*Counsel for Plaintiff and Counterclaim-*
*Defendant Eman Soudani*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 3

    I.    Rosenwasser's relevance to the case ................................................................. 3

    II.    Procedural Posture ........................................................................................ 6

LEGAL STANDARD ........................................................................................................ 13

ARGUMENT ..................................................................................................................... 14

    I.    The subpoena seeks documents and testimony that are directly relevant and material to the case ................................................................................................... 14

    II.    Rosenwasser should be ordered to appear at his deposition or be held in contempt ........ 15

CONCLUSION .................................................................................................................. 18

CERTIFICATE OF SERVICE .......................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMMEX Corporation v. NY Healthlife, LLC*,
    No. 24-MC-84 (KMK), 2024 WL 3102181 (S.D.N.Y. June 24, 2024)............................14, 15

*Brown v. Kelly*,
    No. 05-CV-5442 (SAS), 2007 WL 1573957 (S.D.N.Y. May 31, 2007) ................................14

*Casale v. Kelly*,
    710 F.Supp.2d 347 (S.D.N.Y. 2010)........................................................................................14

*LiButti v. United States*,
    107 F.3d 110 (2d Cir. 1997)...............................................................................................2, 17

*Malibu Media, LLC v. Doe*,
    No. 15-cv-3147 (AJN), 2016 WL 5478433 (S.D.N.Y. Sept. 29, 2016) ................................13

*Moll v. U.S. Life Title Ins. Co. of New York*,
    113 F.R.D. 625 (S.D.N.Y. 1987) ........................................................................................8, 16

*United States v. Arias*,
    404 F. App'x. 554 (2d Cir. 2011) ...........................................................................................16

*United States v. Holland*,
    No. 19-cv-02456 (DG) (JMW), 2023 WL 6542237 (E.D.N.Y. Oct. 6, 2023) .......................13

*United States v. Zappola*,
    646 F.2d 48 (2d Cir. 1981)......................................................................................................16

*Universitas Educ., LLC v. Nova Grp., Inc.*,
    Nos. 11-cv-1590 (LTS)(HBP) and 11-cv-8726 (LTS)(HBP), 2016 WL
    1178773 (S.D.N.Y. Mar. 23, 2016) ........................................................................................16

**Other Authorities**

Fed. R. Civ. P. 45 ...............................................................................................................2, 13, 16

iii

Plaintiff and Counterclaim-Defendant Eman Soudani ("Plaintiff") submits this Memorandum of Law in support of Plaintiff's Motion to Compel Testimony of and Production of Documents by Non-Party Stewart Rosenwasser ("Rosenwasser") at Deposition (the "Motion").

## PRELIMINARY STATEMENT

Rosenwasser, until recently, was an Executive Assistant District Attorney in the Orange County District Attorney's Office ("OCDA"). Declaration of Arthur D. Middlemiss ("Middlemiss Decl.") ¶ 3. His duties included serving as the head of the OCDA's Conviction Integrity Unit and ensuring that the OCDA complied with New York State criminal justice reforms. *Id.*, Exh. A. He is a former acting New York State Supreme Court judge and was a Special Referee for the State of New York Grievance Committee for the Ninth Judicial District and a Referee of the State of New York Commission on Judicial Conduct. *Id.* In November 2023, Rosenwasser was cited as the Arson Prosecutor of the Year by the International Association of Arson Investigators. *Id.* On June 21, 2024, Rosenwasser announced that he was retiring from the practice of law. *Id.* ¶ 4, Exh, B.

Plaintiff and her son fled Orange County for Colorado in October 2022 to escape Defendant's abuse. Amended Complaint, ECF No. 31, ¶ 102. Evidence obtained in discovery indicates that, starting in November 2022, Defendant bribed and conspired with Rosenwasser to reassert his control over and to punish Plaintiff and her son. Defendant paid Rosenwasser at least $48,100 in checks (detailed below) for the apparent purpose of hiring Rosenwasser to investigate and prosecute Plaintiff and her son for the same acts that form the basis of his counterclaims. Middlemiss Decl. ¶ 5, Exh. C. Contemporaneous texts, also obtained in discovery (detailed below), confirm the corrupt purpose of the payments. *Id.* ¶ 6, Exh. D. The evidence demonstrates Defendant's consciousness of guilt regarding his sexual abuse of

1

Plaintiff, eviscerates the integrity of his counterclaims, and destroys his general credibility. If Rosenwasser asserts his Fifth Amendment rights against self-incrimination at a deposition in response to questions about the payments, Plaintiff will seek adverse inferences against Defendant based on the test articulated in *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997).

On July 15, 2024, pursuant to Fed. R. Civ. P. 45, Plaintiff served Rosenwasser with a validly issued subpoena *duces tecum* requiring him to testify at a deposition and to produce documents, including financial records and communications between Rosenwasser and Defendant. *See* Middlemiss Decl. ¶¶ 10-11, Exhs. E, F. His testimony is relevant, as noted above, to establish Defendant's consciousness of guilt regarding his sexual abuse of Plaintiff, shed light on the integrity of Defendant's counterclaims, impeach Defendant's credibility, and investigate whether Defendant made additional payments to Rosenwasser.

The deposition was scheduled for September 13, 2024, following extensive back-and-forth between counsel for Plaintiff and Rosenwasser and several adjournments (described below). *Id*. ¶¶ 12-23. Rosenwasser failed to appear. *Id*. ¶ 25. He offered no valid excuse, stating through counsel only that he intends to invoke the Fifth Amendment and that he "is not able to appear for the deposition on Friday." *Id*. ¶ 23; Exh. G at 2.

Plaintiff asks the Court to order his appearance at a deposition to be held within 2 weeks of the date of this Motion, or such other relief as the Court deems fit and proper, including holding Rosenwasser in contempt in accordance with Fed. R. Civ. P. 45(g) and ordering Rosenwasser to pay reasonable costs and attorneys' fees relating to this Motion.

Plaintiff further asks the Court to waive the requirement for a joint letter motion seeking a pre-motion conference. Per the Court's recent extension, the current close of discovery for depositions is October 18, 2024. Even with the extension, the discovery period remaining is

short, and time is of the essence. Accordingly, Plaintiff requests that the Court waive the pre-motion conference. As detailed below, counsel for Plaintiff and Rosenwasser met and conferred with Rosenwasser's counsel (who informed Plaintiff's counsel on September 11, 2024 that he does not represent Rosenwasser for purposes of an appearance before this Court) several times over the phone and email.

## FACTUAL BACKGROUND

### I.    Rosenwasser's relevance to the case

As the Amended Complaint alleges, Plaintiff and her son fled Defendant's abuse in October 2022, when they left his house in Orange County, New York and fled to Colorado. Amended Complaint, ECF No. 31, ¶ 102.

In November 2022, Defendant contacted Rosenwasser. Rosenwasser was then the Executive Assistant District Attorney in the OCDA. Middlemiss Decl. ¶ 3. He had also represented Defendant (and Plaintiff) multiple times as an attorney while in private legal practice. *Id.* ¶ 2.

Starting in November 2022, Defendant paid Rosenwasser a total of at least $48,100 in a series of checks to investigate and prosecute criminal cases against Plaintiff and her son. *Id.* ¶ 5, Exh. C. Defendant and Rosenwasser communicated by text during OCDA's investigation and prosecution of Plaintiff and her son. *Id.* ¶ 6, Exh. D. The checks and the texts were obtained in discovery and are attached hereto. The texts include a promise by Rosenwasser to always "protect" and 'help" Defendant, and Defendant's admission, days before Rosenwasser called Defendant as a witness in the grand jury and thereby conferred transactional immunity on him, that Defendant had destroyed "everything that was bad" on his phone. *Id.* ¶ 6, Exh. D at MS1679, MS1756. This evidence demonstrates Defendant's consciousness of guilt regarding his sexual abuse of Plaintiff, decimates his counterclaims, and is otherwise devastating to Defendant's

credibility. It is also relevant to Rosenwasser's collusion with Defendant to bring false criminal charges against Plaintiff and her son.

The chart below summarizes the checks and texts in relation to key dates in the investigation and prosecution of Plaintiff and her son:

| Date | Milestone/Text Message |
|------|------------------------|
| Nov. 10, 2022 | TEXT: Rosenwasser arranges to meet with Defendant outside the offices of the OCDA. |
| Nov. 10, 2022 | CHECK for $15,000 issued to Rosenwasser by Defendant; negotiated by Rosenwasser that same day. |
| Nov. 14, 2022 | SUBPOENA: Rosenwasser issues grand jury subpoena to Coinbase, Inc. (believed to be first grand jury subpoena in the criminal investigation). |
| Dec. 20, 2022 | TEXT: Defendant tells Rosenwasser he is the "perfect man for the job" and that he "is going to remember that." |
| Dec. 23, 2022 | TEXT: Rosenwasser tells Defendant he will go to Colorado for execution of search warrant; states "I think when Eman see me, it's over." Defendant responds "I will give my word at the end you will be extremely more than happy" and asks to meet with Rosenwasser for "five minutes." |
| Dec. 25, 2022 | CHECK for $5,000 issued to Rosenwasser by Defendant; negotiated by Rosenwasser December 28, 2023. |
| Dec. 26, 2022 | TEXT: Rosenwasser arranges to meet in person with Defendant. |
| Jan. 20, 2023 | TEXT: Defendant states that he knows Rosenwasser is "protecting" him and does not want "harm to come to" him, even though Defendant is "clean as a whistle;" Rosenwasser responds that "I will always protect you. And help you." |
| Jan. 23, 2023 | TEXT: Defendant texts Rosenwasser that "the charges has to scare the shit out of him [the Defendant]" Rosenwasser responds "I will call you tomorrow. We must stop creating test [sic] messages. Period." |
| Feb. 13, 2023 | CHECK for $5,000 issued to Rosenwasser by Defendant, negotiated that same day by Rosenwasser. |
| Feb. 24, 2023 | SEARCH WARRANT AFFIDAVIT: Rosenwasser swears out search warrant applications; does not disclose to Court that Defendant had paid him $25,000 to date. |
| Mar. 7, 2023 | TEXT: Defendant states "I wish you will have some recordings for the arrest I want to see them humiliated," Rosenwasser responds, "You will be able to see body cam footage." |

4

| Date | Milestone/Text Message |
|---|---|
| Mar. 8, 2023 | ARREST: Plaintiff and her son arrested in Colorado; Rosenwasser present in Colorado when arrests were made |
| April 12, 2023 | ARRAIGNMENT: Plaintiff arraigned on felony complaint in Middletown City Court, New York |
| Apr. 14, 2023 | CHECK for $5,000 issued to Rosenwasser by Defendant; negotiated by Rosenwasser that same day. |
| May 6, 2023 | TEXT: Defendant tells Rosenwasser "Number one my phone is clean everything that was bad is turned off or completely completely taken out" (sic) |
| May 10. 2023 | GRAND JURY: Defendant testified in Grand Jury, receives immunity. |
| May 12, 2023 | GRAND JURY: Plaintiff's son indicted for first degree grand larceny and other crimes. |
| Sep. 12, 2023 | OCDA MEETING: Plaintiff met with Chief ADA Borek at the OCDA's office |
| Sep. 13, 2023 | CHECK for $3,100 issued to Rosenwasser by Defendant; Rosenwasser negotiated the check the next day, September 14, 2023. |
| Nov. 28, 2024 | GUILTY PLEA: Plaintiff's son pleads guilty to third degree grand larceny |
| Jan. 5, 2024 | RESTITUTION: The OCDA issues check to Defendant for restitution in the amount of $478,286.42. |
| Jan. 8, 2024 | CHECK for $15,000, issued to Rosenwasser by Defendant; Rosenwasser negotiated the check on January 9, 2024. |

*Id*. ¶ 8; *see also Id.* ¶¶ 5-6, Exhs. C, D.

Neither Rosenwasser nor the OCDA ever disclosed these payments or texts to Plaintiff or her son during the criminal investigation and prosecution. *Id*. ¶ 7. In April 2023, Rosenwasser claimed in writing to defense counsel for Plaintiff that he "**would not even** describe my relationship with the Soudani family as social" (emphasis added). *Id.* In truth and fact, ADA Rosenwasser had already received $25,000 (of an eventual total of $48,100) from Soudani, promised to "help" and "protect" Soudani, and agreed to help Soudani see his family humiliated by supplying police body cam footage of their arrest. *Id.* ¶ 6, Exh. D at MS1679, MS1731.

Plaintiff's son has filed a motion in New York State Supreme Court pursuant to New York State Criminal Procedure Law § 440.10 asking the court to vacate the conviction of

Plaintiff's son and to dismiss the underlying indictment. *Id*. ¶ 9. The OCDA has declined to join in the motion and recused itself from its resolution. *Id*. The Rockland County District Attorney's Office was appointed to serve as Special District Attorney in the case. *Id*.

On June 21, 2024, Rosenwasser advised the OCDA in an email that he was retiring from the practice of law and leaving his position at the OCDA, effective immediately. *Id*. ¶ 4.

## II.    Procedural Posture

On July 15, 2024, Plaintiff executed personal service of a subpoena on Rosenwasser seeking his appearance at a deposition on July 26, 2024. *Id*. ¶¶ 10-11, Exhs. E, F. The subpoena required him to produce documents specified therein on the same date. *Id*. ¶ 11, Exh. E.

On July 25, 2024, the day before the scheduled deposition, Rosenwasser emailed Plaintiff's counsel to say that he was in the process of retaining counsel and asked for an adjournment for that purpose. *Id*. ¶ 12. Plaintiff's counsel agreed to adjourn the deposition until August 2, 2024. *Id.*

On July 29, 2024, Plaintiff's counsel emailed Rosenwasser to report that Defendant's counsel was unavailable on August 2, 2024, and that the deposition would be held on August 6, 2024. Rosenwasser was asked to acknowledge receipt or have his attorney do so. *Id.* ¶ 13.

On July 31, 2024, having not received a response, Plaintiff's counsel again asked Rosenwasser to confirm receipt of the July 29 email, or ask his counsel to do so. *Id.* ¶ 14.

On August 1, 2024, having not received a response, Plaintiff's counsel again asked Rosenwasser to confirm receipt of the July 29 email, or ask his counsel to do so. *Id.* ¶ 15. That same day, Rosenwasser responded that he had forwarded the emails to counsel, that he planned to speak with his counsel "shortly," and that he would ask his counsel to call Plaintiff's counsel. *Id.*

On August 2, 2024, Mr. Rosenwasser's counsel, Benjamin Allee, contacted Plaintiff's counsel and asked to reschedule the deposition for the week of August 19 to accommodate counsel's schedule. *Id.* ¶ 16.

Plaintiff's counsel then sought available dates from Defendant's counsel. *Id.*

On August 13, 2024, Defendant's counsel provided dates that he would be available. *Id.*

On August 16, 2024, Plaintiff's counsel proposed potential dates for the deposition to Rosenwasser's counsel. *Id.*

On August 19, 2024, having received no answer from Rosenwasser's counsel (we understand he was out of the office on August 16), Plaintiff's counsel emailed Rosenwasser's counsel to suggest August 27, 2024 for the deposition. *Id.* ¶ 17.

On August 20, 2024, Rosenwasser's counsel responded that he was not available on August 27, 2024. *Id.* ¶ 18. He did not suggest another date, but rather asked if counsel could speak the next day "regarding this matter and scheduling." *Id.*

On August 22, 2024, Rosenwasser's counsel and Plaintiff's counsel spoke by phone. *Id.* ¶ 19. Rosenwasser's counsel informed Plaintiff's counsel that Rosenwasser intended to invoke the Fifth Amendment privilege at the deposition, and argued in substance that it would not be meaningful for Rosenwasser to appear at the deposition. *Id.* Plaintiff's counsel told Rosenwasser's counsel, in substance, that there were topics to which Rosenwasser would not be entitled to take the Fifth Amendment privilege, such as his employment by the OCDA, and that he should be required to assert the Fifth Amendment privilege on a question-by-question basis. *Id.* Rosenwasser's counsel further asked Plaintiff's counsel to consider whether there was an alternative to a deposition, and Plaintiff's counsel replied that he would consider the points raised by counsel. *Id.*

On August 29, 2024, Plaintiff's counsel informed Rosenwasser's counsel that Defendant's counsel had been unavailable, but was available on September 13, 2024, and that "[w]e would like to schedule the deposition for that date." *Id.* ¶ 20

On September 5, 2024, Plaintiff's counsel emailed Rosenwasser's counsel, noting that there had been no response to the August 29 scheduling email, that he presumed therefore that September 13 was a good date for the deposition, and that "we are making arrangements to hold the deposition on 9/13 at 930 am at our offices." *Id.* ¶ 21.

On September 9, 2024, Rosenwasser's counsel responded to the September 5 email. *Id.* ¶ 22. Counsel reasserted that Rosenwasser "would not answer questions," noted that Plaintiff's counsel had told him that he would consider the argument and alternatives to a deposition, and said that he had not "heard back from [Plaintiff's counsel] other than regarding your arrangements for the deposition." *Id.* Plaintiff's counsel then asked to meet and confer on Wednesday (i.e., September 11) or Thursday. *Id.*

That same day, September 9, 2024, Plaintiff's counsel responded as follows:

Ben – thanks for getting back to us.

Following up on our conversation on 8/22, I sent an email on 8/29 inquiring regarding your availability for deposition on 9/13. When you did not respond, I sent a follow up email on 9/5 setting the 9/13 date, and informing you that we were making arrangements for the deposition. We also sent you a letter that should arrive at your office today if has not already.

"When a deposition is sought, the availability of the Fifth Amendment privilege does not mean that the witness need not attend the deposition. The proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he can without risking self-incrimination." *Moll v. U.S. Life Title Ins. Co. of New York*, 113 F.R.D. 625, 628-29 (S.D.N.Y. 1987). Our intent is to follow this procedure.

I am happy to meet and confer regarding the deposition. However, I suggest

that we do so today. As noted in our communications, we have made arrangements to hold the deposition on 9/13, and we will seek costs from Mr. Rosenwasser if he does not appear. If we were to cancel or re-schedule, our best chance to avoid or minimize such costs would be to do so as soon as possible.

As to relevance, Mr. Rosenwasser's testimony is critical with respect to the defendant's counterclaims. The defendant alleged in a counterclaim that our client and her son stole money from him. It appears the defendant paid Mr. Rosenwasser to investigate and prosecute. If true, that fact would tend to destroy the defendant's counterclaim. Mr. Rosenwasser's testimony is required on this basis.

*Id.* Exh. G at 7.

That same day, September 9, 2024, Rosenwasser's counsel responded:

Good afternoon Art.  I am not free today but could do tomorrow 11am if that works for you?

Regarding your email, thank you for your response.  But you still have not addressed the question I asked on August 22 and that, to my understanding, you were considering.  What is the purpose of taking the deposition when the third-party witness invokes his right?  The deposition will not yield any relevant testimony based on your assessment of relevance below.  What need is there to take the deposition in these circumstances?

Thank you.

*Id.* at 6-7.

That same day, September 9, 2024, Plaintiff's counsel responded as follows:

Ben – I apologize that my emails of 8/29 and 9/5 regarding scheduling were not clear enough to indicate our intent to require Mr. Rosenwasser to appear on 9/13. As a courtesy I explained below why he is a relevant witness. But recall that his relationship with the defendant and the family is a long one. We do not believe he will be entitled to take the 5th to every question posed. We are also not obliged to disclose the full subject matter of his testimony.

I have considered whether an FRCP 31(a)(1) type deposition would work, but we have decided it will be more efficient simply to take his deposition, particularly with the expiry of the discovery period coming up.

> I may not be available at 11 tomorrow morning, but let's schedule the call and
> my colleague Anthony Capozzolo will cover it.  His mobile is ….

*Id.* at 6.

On September 10, 2024, Rosenwasser's counsel and Plaintiff's counsel engaged in a

telephonic meet and confer session. *Id.* ¶ 23. Counsel did not reach a resolution. *Id.*

That same day, September 10, 2024, Plaintiff's counsel emailed Rosenwasser's counsel

to summarize the call and state Plaintiff's position:

> Ben,
>
> Thank you for the meet and confer today regarding Mr. Rosenwasser's intent
> to take the Fifth Amendment to questions posed at the deposition.  We
> appreciate the professional and non-acrimonious discussion.
>
> We had the following takeaways and provide some additional points to consider
> when speaking to your client and responding.
>
> As we indicated, we believe the law is clear in the Second Circuit that an
> adverse inference can be taken against a defendant with regard to the invocation
> of the Fifth Amendment by a non-party if the four part test in <u>LiButti v United
> States</u> (876 F.2d 1080) is applicable.  In this matter, we feel comfortable that
> we have a substantial case to make that Mr. Rosenwasser's invocation to the
> Fifth Amendment can justify an adverse inference against Moutz Soudani.
>
> To that end, we believe it necessary for Mr. Rosenwasser to invoke the Fifth
> Amendment to specific questions so that we can properly make that application
> to the Court.  We think accepting some global invocation of the Fifth
> Amendment would weaken our ability to get specific adverse inferences against
> Moutz Soudani.
>
> Further, because Mr. Rosenwasser's relationship with Soudani goes back many
> years, we believe that there are many questions for which Mr. Rosenwasser
> cannot take the Fifth because they are relevant to the claims in the Plaintiff's
> case in chief, and not related to the allegations in the counterclaims.  As a result
> we may ask Mr. Rosenwasser about events that took place well before the
> bribery scheme that has been alleged to have taken place.  If Mr. Rosenwasser
> invokes the 5th, it is the normal procedure that a witness should appear and take

the Fifth to questions. This is required to make the necessary record for the Court to evaluate whether the right was properly invoked.

We believe your application of the "link in the chain" analysis overstates the scope of the Fifth Amendment. Using that logic, it would be hard to envision a case where a witness could not evade all questions at any deposition by invoking the Fifth Amendment. We understand that Mr. Rosenwasser has known Moutz Soudani going back more than 40 years, and had substantial engagement with him and his family during that period. It is hard to imagine that any such testimony about his observations back then could be incriminatory given that the Statute of Limitations would have long passed on any conduct going back that far. Rather, such testimony would simply be relevant to our client's claims as stated in the complaint, and to her defenses with respect to the defendant's counterclaims.

Finally, we would extend as a courtesy, to you and your client, the opportunity to conduct the deposition virtually to alleviate some of the cost and burden that an in person deposition would carry in an attempt to find an accommodation that would work for both parties.

We look forward to resuming this discussion as soon as you are able to, in an attempt to move forward. Mr. Rosenwasser was first noticed for deposition in early August [sic], and the period for discovery is now coming to an end.

*Id.* Exh. G at 4-5.

On September 11, 2024, counsel for Rosenwasser emailed thanking counsel for Plaintiff for his email, reporting that he was reviewing and considering the response, and asking about the expiry of the discovery period. *Id.* at 3.

That same day, September 11, 2024, counsel for Plaintiff emailed counsel for Rosenwasser as follows:

Ben,

Discovery ends, for the purpose of this deposition on September 24.

But to be clear, we are not amenable to moving the date of the deposition due to the fact that the window is closing soon and there are other outstanding

discovery matters we are resolving with the Defendant and our own schedules for other matters.

With no slight intended to you personally, Mr. Rosenwasser was served with this subpoena on July 15, 2024 and we view his late hour attempt to delay, by him, as not warranted given that the caselaw indicates that the typical and proper procedure is for the non-party witness to attend the deposition and assert his Fifth Amendment rights to the questions as posed. Given his own previous experience as a judge and attorney, he must have appreciated the nature of the subpoena and the deadlines involved in resolving issues such as this.

One final note, in discussing the logistics of a remote/virtual deposition with others, I need to withdraw our previous offer to conduct the deposition remotely due to the need to show him exhibits.

Please reach out to us immediately if you wish to discuss any further issues prior to Friday's deposition date.

*Id.* at 2-3.

That same day, September 11, 2024, Rosenwasser's counsel emailed and stated that he continued to review the response and asked for a postponement of the deposition. *Id.* at 2. He further stated that "Stewart is not able to appear for the deposition on Friday," and that whether he appeared in the future, or litigation was required to resolve the issue, depended on that further review. *Id.* He further noted that "while I have endeavored to negotiate a resolution as a courtesy to Stewart, my firm is not retained for purposes of any litigation in this matter at this time." *Id.* ¶ 24, Exh. G at 2. This was the first time Plaintiff's counsel was informed that Mr. Allee was not retained in this matter.

That same day, September 11, 2024, Plaintiff's counsel responded as follows:

Ben,

Thank you for consistently responding to our emails.

We will not agree to a delay. Mr. Rosenwasser was noticed for this deposition

in July.

We then delayed at his request for him to secure counsel.

We then delayed again due to your vacation.

We informed him of the deposition date on multiple dates and again, after we met and conferred.

We have incurred costs.  Now Mr Rosenwasser says he cannot attend, without explanation, and we are informed that your firm is not yet actually engaged to represent him for purposes of litigation.  To be clear, your attempt to assist him is admirable (and your conduct professional and courteous).  Mr. Rosenwasser's delay in obtaining counsel is patently inexcusable given his decades of legal experience and the statement that he is not able to appears only calculated and dilatory.

We expect to see Mr. Rosenwasser on Friday.  If we do not, we will move to compel and seek all available remedies.

*Id.* Exh. G at 1-2.[1]

On September 12, 2024, Rosenwasser's counsel acknowledged the email and reiterated that Rosenwasser would not be appearing for the deposition on September 13.  *Id.* at 1.

The deposition was scheduled for 9:30 a.m. on September 13, 2024. *Id.* ¶ 25. Rosenwasser did not appear or produce any documents. *Id.*

## <u>LEGAL STANDARD</u>

Subpoenas issued to non-parties under Fed. R. Civ P. 45 are "subject to the relevance requirement of Rule 26(b)(1)." *Malibu Media, LLC v. Doe*, No. 15-cv-3147 (AJN), 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016). Validly issued and served subpoenas under Fed. R. Civ. P. 45(a)(3) are "enforceable mandates of the court on whose behalf they are served." *United States v. Holland*, No. 19-cv-02456 (DG) (JMW), 2023 WL 6542237, at *2 (E.D.N.Y. Oct. 6, 2023).

---

[1] Plaintiff's counsel incurred costs in preparing for and litigating with counsel about the deposition.

Absent an "adequate excuse" by the non-party, failure to comply with a subpoena issued under Rule 45 may be deemed a contempt of the court where compliance is required. Fed. R. Civ. P. 45(g). A court may award attorneys' fees and costs to a victim of contempt. *AMMEX Corporation v. NY Healthlife, LLC*, No. 24-MC-84 (KMK), 2024 WL 3102181, at *2 (S.D.N.Y. June 24, 2024) (quoting *Casale v. Kelly*, 710 F.Supp.2d 347, 367 (S.D.N.Y. 2010)). "[E]ven where a court declines to issue a citation of contempt for violations of the court's orders, attorneys' fees and costs may be recoverable where the bringing of the action should have been unnecessary and was compelled by … unreasonable, obdurate obstinacy." *Brown v. Kelly*, No. 05-CV-5442 (SAS), 2007 WL 1573957, at *6 (S.D.N.Y. May 31, 2007) (internal quotation marks omitted).

## ARGUMENT

### I.    The subpoena seeks documents and testimony that are directly relevant and material to the case

Discovery revealed that Defendant paid Rosenwasser, then an Executive Assistant District Attorney in the OCDA, a former New York State judge and member of multiple attorney disciplinary committees, to investigate and prosecute Plaintiff and her son for the same acts that form the basis of his current counterclaims. Contemporaneous texts, also revealed in discovery, confirm the corrupt purpose of the payments. Middlemiss Decl. ¶¶ 6, 8. That Defendant appears to have bribed a prosecutor to bring criminal cases establishes his consciousness of guilt of his abuse of Plaintiff, eviscerates the integrity of his counterclaims, and destroys his general credibility.

Rosenwasser's testimony about the bribery scheme exposed by the checks and text messages is also relevant because it supports an inference that Defendant was attempting to regain control and/or intimidate the Plaintiff, and to prevent her from reporting the years of sexual abuse outlined in the Complaint. The criminal prosecution of Plaintiff and her son was

initiated by Defendant only after they had fled from Defendant's home in New York to Colorado.[2] This inference is supported by contemporaneous texts, quoted in the Amended Complaint, wherein Defendant stated: "[t]he more she fights me and opens her big mouth, the more I will be punishing her son like you have never seen before."[3] Amended Complaint, ECF No. 31, ¶ 112.

## II. Rosenwasser should be ordered to appear at his deposition or be held in contempt

Rosenwasser has asserted no reason why he should not appear at the deposition and produce documents, other than that he will invoke the Fifth Amendment and that he is "not able to appear." Middlemiss Decl., Exh. G at 2. He is a former judge and senior prosecutor; he knows his obligations under the law and has flouted them. His failure to appear is contemptuous and appears willful. If Rosenwasser had a valid reason, such as an existing or emergency medical appointment, or pre-existing travel plans, he could have said so, but did not. Instead, he stated flatly that he would not appear. Rosenwasser should be ordered to appear and pay reasonable attorneys' fees and costs that Plaintiff incurred in respect to this Motion and enforcing the

---

[2] The subpoena likewise requires Rosenwasser to produce relevant and material documents, such as his financial records, communications between Rosenwasser and Defendant, and any loan agreements between Rosenwasser and Defendant. Middlemiss Decl. ¶ 10, Exh. E. The records sought to establish Rosenwasser's receipt of the bribes and use of the proceeds, and to investigate whether Defendant made additional payments to Rosenwasser.

[3] The entire message Defendant said stated as follows:

> Now, as for [Plaintiff], all she has to do is give me $150,000 cash, give me back the car, and give me Rascal [a dog]. I would then be done with both of them forever, I wish her no harm and would be content with never seeing either one of them ever again. As you see the case is very very simple. It would be as if nothing ever happened. Now let me explain to you some facts about this case, please pay attention closely. **The more she fights me and opens her big mouth, the more I will be punishing her son like you have never seen before.**
>
> NOW – this case is very unique, let me tell you why. Usually the police make the arrest and bring the charges and the prosecutor would follow through with the charges. This case is different, the DA started the investigation, will make the charges and will prosecute the case. From what I know, he has never lost a case in his career. Also you should know, the bus stops here at the DA's office. Nothing will happen unless he wants it to happen. **So far, all the bad mouthing from [Plaintiff] and [her son] has reached me. I know every word they said and trust me it doesn't mean shit. It is all hearsay.** It does not explain the crimes they have committed.

ECF No. 31-3 at 1 (emphasis added).

subpoena. *AMMEX Corporation,* 2024 WL 3102181, at *3 (awarding attorneys' fees, costs, and fine against defendant for failure to comply with validly issued subpoena, where defendant failed to adequately justify its lack of action with regard to the subpoena).

The claim that Rosenwasser will make a blanket assertion of the privilege is insufficient to excuse his appearance. "[T]he availability of the Fifth Amendment privilege does not mean that the witness need not attend the deposition. The proper procedure is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he can without risking self-incrimination." *Moll v. U.S. Life Title Ins. Co. of New York*, 113 F.R.D. 625, 628-29 (S.D.N.Y. 1987). "[T]he general reasonableness of a fear of potential self-incrimination does not justify a refusal to answer any and all questions. The appropriateness of assertions of privilege must be determined on a question-by-question basis." *Universitas Educ., LLC v. Nova Grp., Inc.*, Nos. 11-CV-1590 (LTS)(HBP) and 11-CV-8726 (LTS)(HBP), 2016 WL 1178773, at *4 (S.D.N.Y. Mar. 23, 2016) (internal citations omitted).

Rosenwasser's testimony would include responding to questions to which a Fifth Amendment privilege would plainly be inapplicable, including but not limited to questions relating to his background and position, his eyewitness account of the relationship between Plaintiff and Defendant over the years, his participation in events that took place well before the alleged bribery scheme, and the OCDA's policies and procedures. Rosenwasser's appearance at the deposition and invocation of the Fifth Amendment privilege in response to specific questions is also the only way to enable this Court to undertake the required "particularized inquiry" to determine whether the assertion was "founded on a reasonable fear of prosecution as to each of the posed questions." *United States v. Arias*, 404 F. App'x. 554, 556 (2d Cir. 2011) (quoting *United States v. Zappola*, 646 F.2d 48, 53 [2d Cir. 1981]). Similarly, to the extent Rosenwasser

seeks to invoke the Fifth Amendment privilege with respect to the documents requested, he should produce a privilege log with the level of detail required by Fed. R. Civ. P. 45(e)(2)(A) that would permit the Parties and the Court to assess the appropriateness of the privilege over specific documents.

Rosenwasser's invocation of the Fifth Amendment privilege in response to specific questions and documents – rather than a blanket assertion of the privilege – will allow Plaintiff to seek adverse inferences against Defendant based on the invocation. As set out in *LiButti*, a non-party's assertion of the Fifth Amendment privilege may be used to draw an adverse inference against a party after considering (i) the nature of the relevant relationships; (ii) the degree of control of the party over the non-party witness; (iii) the compatibility of the interests of the party and non-party witness in the outcome of the litigation; and (iv) the role of the non-party witness in the litigation. *LiButti*, 107 F.3d at 123. For Plaintiff to seek such adverse inferences, and for the Court to determine whether they are appropriate, Rosenwasser must be required to invoke the privilege in response to specific questions and documents.

17

## **CONCLUSION**

For the reasons stated, this Court should order Rosenwasser to appear, testify, and produce documents at a deposition to be held within two (2) weeks of the date of this Motion, or, in the alternative, hold Rosenwasser in contempt in accordance with Fed. R. Civ. P. 45(g). This Court should also order Rosenwasser to pay reasonable costs and attorneys' fees relating to this Motion.

Dated:    New York, New York
          September 16, 2024

Respectfully submitted,

LEWIS BAACH KAUFMANN
MIDDLEMISS PLLC

By: /s/ Arthur D. Middlemiss
Arthur D. Middlemiss
Arthur.Middlemiss@lbkmlaw.com
Marc Scholl
Marc.Scholl@lbkmlaw.com

10 Grand Central
155 East 44th Street, 25th Floor
New York, NY 10017
Telephone: (212) 826-7001
Facsimile: (212) 826-7146

*Counsel for Plaintiff and Counterclaim-Defendant Eman Soudani*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 16th day of September, 2024, a copy of the foregoing was filed with the Clerk of the Court using the CM/ECF system.  I further certify that I caused a copy of the foregoing to be served via overnight mail to Stewart Rosenwasser at his home address in Campbell Hall, NY, 10916, and a courtesy copy of the same to be sent via email to Mr. Benjamin Allee, Mr. Rosenwasser's attorney.

By: /s/ Arthur D. Middlemiss
Arthur D. Middlemiss

19